## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE D'ANGELO | : | NO. 3:02CV1313(SRU) |
| *Plaintiff,* | : | |
| | : | |
| VS. | : | |
| | : | |
| KENNETH KIRSCHNER, ET AL. | : | |
| *Defendants.* | : | AUGUST 31, 2005 |

### THE DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants move for summary judgment against the plaintiff's lawsuit. The defendants contend that there are no material issues of fact concerning the allegations raised by the plaintiff. Specifically, the defendants contend as follows:

1.      There are no material issues of fact in dispute concerning the plaintiff's claim of false arrest and malicious prosecution because if the affidavit in question had been "corrected" with the material allegedly omitted, there would still have been probable cause.

2.      The plaintiff's claim of defamation must fail because the statements at issue were privileged having been were made in the course of a criminal investigation and a Connecticut State Police Internal Affairs Investigation.

3.      The plaintiff's claim of intentional infliction of emotional distress fails because, given that there was probable cause to arrest the plaintiff, there could not be extreme and outrageous conduct. In addition, to the extent that the plaintiff's claim of intentional infliction of

emotional distress are based on statements made in the Connecticut State Police Internal Investigation they are privileged.

4.      The plaintiff's claim of unlawful search and seizure fails because the only search warrant in this case was not secured by the defendants.

5.      The plaintiff is barred from bringing this action because of an agreement he signed with the Connecticut Department of Public Safety in which he waived his right to bring this action.

6.      The defendants are immune from suit based on the doctrine of qualified immunity.

## I.      FACTS

The undersigned respectfully refers the court and the parties to the Local Rule 56 statement of material facts not in dispute filed with this motion for summary judgment for a detailed presentation of the facts of this case.

The plaintiff is a retired Connecticut State Police ("CSP") Trooper.  During the events in question, he administered what was called the "Northstar program." Pursuant to the Northstar program, the federal government provided surplus military material to states for them to distribute to police departments for law-enforcement related activities.  The plaintiff was the "screener" for the CSP.   In this capacity he would travel to various military facilities, pick up material, and distribute it to the CSP and other law enforcement agencies. The Northstar program was run out CSP property in Meriden, Connecticut.

In early 1997, Major Richard Covello, who commanded the CSP's Bureau of Criminal Investigations Unit, heard rumors that the plaintiff was trading Northstar property for personal benefit.  He heard that CSP Trooper Richard Binkowski had first-hand knowledge of the plaintiff's wrongdoing.  He reported this to Department of Public Safety Commissioner Kenneth Kirschner.  Commissioner Kirschner directed Major Covello to investigate the matter.  Major Covello assigned Lt. Kasche and Sergeant Russell (both members of his unit) to interview Trooper Binkowski.  They took a statement from Trooper Binkowski, in which he reported that he traded his personally-owned Belgian 9mm for Northstar property.

Based on the statement of Trooper Binkowski, Major Covello had reason to believe that the plaintiff was engaged conduct that violated the code of conduct of the Connecticut State Police.  Trooper Binkowksi informed Lt. Kasche and Sgt. Russell that he had a telephone conversation during which Mr. D'Angelo offered to trade him Northstar material for personal property.

Major Covello then authorized Lt. Kasche and Sgt. Russell to provide Trooper Binkowski with a microcassette recorder to tape a phone conversation in which it was anticipated that Mr. D'Angelo would offer to trade Northstar material for personal property.  This telephone conversation was recorded on January 7, 1997.  On January 9, 1997, the plaintiff met with Trooper Binkowski at the Northstar facility.  During this meeting, the plaintiff offered to trade the binoculars for Trooper Binkowski's .45 caliber pistol.  The exchange took place that day.  On January 12, 1997, Major Covello reported to Commissioner Kirschner and advised him of what

3

he had learned.  At this meeting, Commissioner Kirschner transferred the investigation to Major Crime Unit, which was commanded by Lt. Mannion.

In May 1997, Lt. Mannion applied before the Superior Court for an arrest warrant for the plaintiff.  The arrest warrant application was supported by an affidavit which detailed the plaintiff's wrongdoing.  The information charged the plaintiff with four counts of violation of Connecticut law.  Two counts charged the plaintiff with wrongdoing concerning the binoculars, one count concerned the trade for the Belgian 9mm, and one count alleged that the plaintiff gave a way a meat grinder owned by Northstar to his next door neighbor.  The Superior Court found probable cause and  authorized the plaintiff's arrest.

The CSP Internal Affairs Unit conducted an investigation of the plaintiff's conduct as an administrator of the Northstar program, charging him with incompetence and conduct unbecoming an officer.  In March 1998, the plaintiff signed an agreement with the CSP in which he agreed that the charges against him were sustained.  As part of this agreement, he was permitted to retire.  Finally, the plaintiff agreed in the stipulation to "waive[] his right to file any and all civil or administrative claims related to this matter."

In May 1999, State's Attorney Michael Dearington requested that the Superior Court nolle the charges against the plaintiff.  The Superior Court dismissed the charges.

The plaintiff now brings this action alleging that the defendants conspired to violate his rights under the United States Constitution to be free from unlawful arrest and unlawful search and seizure.  He also alleges that they defamed him, violated his right to privacy, and intentionally inflicted emotional distress on him.  He names as defendants Commissioner

4

Kirschner, Major Covello, Lt. Kasche, Sgt. Russell, Lt. Mannion and also William McGuire, a former Commissioner of the Department of Public Safety and Lt. Colonel in the CSP. The defendants deny the plaintiff's allegations.

## II.     STANDARD OF REVIEW

Summary judgment is appropriately granted when evidentiary records show that there are no genuine issues of <u>material</u> fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-48 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323, 324 (1986).

While the Court must view the facts presented in the light most favorable to the party opposing the motion, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a Motion for Summary Judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987). Additionally, "mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1990). Once the movant has met his burden, "the nonmoving party, in order to defeat summary judgment, must come forward

with evidence that would be sufficient to support a jury verdict in his favor." <u>Goenaga v. March</u>

<u>of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995).

**III.    DISCUSSION**

    **A.    There are no Material Issues of Fact Concerning the Plaintiff's Claims of**
          **False Arrest and Malicious Prosecution**

        **1.    Standard**

The standards applicable to claims of constitutional violations based upon allegations that

the defendant police officers submitted false and misleading affidavits, devoid of probable cause,

in support of search and arrest warrants are well-settled.    The Fourth Amendment to the

United States Constitution provides that no person may be subjected to unreasonable seizures.

This protection includes the right to be generally free from searches unsupported by probable

cause, as well as the right to be free from arrests without probable cause. <u>Weyant v. Okst</u>, 101

F.3d 845, 852 (2d Cir. 1996).  On the other hand, there can be no federal civil rights claim for

false arrest where the arresting officer had probable cause.  The existence of probable cause to

arrest is a complete defense to an action for false arrest.  <u>Id</u>. at 852 (internal citations and

quotations omitted).  Probable cause exists "where 'the facts and circumstances . . . [are]

sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has

been or is being committed." <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76, 93 L. Ed. 1879,

69 S. Ct. 1302 (1949) (quoting <u>Carroll v. United States</u>, 267 U.S. 132, 162, 69 L. Ed. 543, 45 S.

Ct. 280 (1925)).  To decide whether probable cause exists, a judicial officer must examine the

totality of  the circumstances. <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct.

2317 (1983). The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction. United States v. Fisher, 702 F.2d. 372, 375 (2d Cir. 1983).

The issuance of a search warrant, or a warrant for the plaintiff's arrest, creates a presumption that it was objectively reasonable for the defendant police officers to believe that there was probable cause to support it. See, e.g., Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221, 120 L.Ed.2d 902, 112 S.Ct. 3032 (1992). In the criminal context, a defendant can overcome the presumption of probable cause afforded by a warrant by demonstrating that 1) the affiant either intentionally or with reckless disregard for the truth made a false statement in his warrant application and 2) the neutral magistrate would not have issued the warrant but for the false statement. Franks v. Delaware, 438 U.S. 154, 155-56, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978). This Franks analysis has been applied to civil cases involving a challenge to the presumption of qualified immunity afforded by a warrant. See, e.g., Smith v. Edwards, 175 F.3d 99, (2d Cir. 1999); Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990); Willocks v. Dodenhoff, 110 F.R.D. 652, 655-59 (D. Conn. 1986). Presumptively, the same standard would apply in civil cases where, as here, the defendants also claim that the corrected warrant affidavit, in fact, established probable cause to support the contested arrest.

A section 1983 plaintiff challenging a warrant on this basis must make the same showing that is required at a suppression hearing under Franks v. Delaware: the plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or

omissions were necessary to the finding of probable cause. Golino, 950 F.2d at 870-71; see also, Franks v. Delaware, supra, 438 U.S. at 171-72.  Unsupported conclusory allegations of falsehood or material omission cannot support a Franks challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof.  See Zandhri v. Dortenzio, 228 F.Supp.2d 167, 174 (D.Conn. 2002), citing Franks v. Delaware, supra, 438 U.S. at 171. Moreover, when police officers move for summary judgment on the basis of qualified immunity, "plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992).  Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the "corrected affidavit" would have supported a finding of probable cause.  Velardi v. Walsh, 40 F.3d 569, 573-74 (2d Cir 1994), citing Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993); Cartier, supra, 955 F.2d at 845.  See also, State of Connecticut v. Tomasko, 242 Conn. 505, 518, 700 A.2d 28 (1997) ("Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").  Thus, only if the corrected affidavit did not support an objective finding of probable cause would the factual disputes be material to resolving the issue of probable cause.  In that case, summary judgment appropriately would be denied and the factual issues would be submitted to the jury to determine the question of qualified immunity – that is, whether a reasonable police officer could have mistakenly believed that the contested factual issues were not material, and that probable cause

nonetheless existed.  See Ham v. Greene, 248 Conn. 508, 521, 729 A.2d 740, cert. denied, 528

U.S. 929, 120 S.Ct. 326, 145 L.Ed.2d 254 (1999); Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir.

1992).

In addition, in order to establish a Franks violation, a plaintiff is required to make a

showing of intent, i.e., a "deliberate falsehood" or "reckless disregard for the truth."  Franks,

supra, 438 U.S. at 171.  Franks recognizes that information an affiant reports may not ultimately

be found to be accurate, and is nonetheless willing to tolerate such a result at that early stage of

the process, so long as the affiant believed the accuracy of the statement at the time it was made.

Id., 438 U.S. at 165.  Because the consequences of arrest or search are less severe and easier to

remedy than the consequences of an adverse criminal verdict, a duty to disclose potentially

exculpatory information appropriate in the setting of a criminal trial to protect the due process

rights of the accused is less compelling in the context of an application for a warrant.  Mays v.

City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998).  Except in the very rare case where a plaintiff

makes a strong preliminary showing that the affiant with an intention to mislead excluded critical

information from the affidavit, and the omission is critical to the finding of probable cause,

Franks is inapplicable to the omission of disputed facts.  Id. (emphasis in original).[1]  Thus, while

not immune from a Franks inquiry, affidavits with potentially material omissions are much less

---

[1]     Courts have applied the Franks analysis to omissions of information from warrant affidavits as well.  See Mays v. City of Dayton, supra.  However, where the constitutional claim arises from alleged material omissions from warrant affidavits, a much stricter level of scrutiny applies.  This is so because allowing omissions to be challenged on the same footing as that of false statements included in the warrant would create a situation where almost every affidavit of an officer would be questioned.  Mays, supra, 134 F.2d at 815.

likely to merit a <u>Franks</u> hearing than are affidavits which allegedly include false statements.  <u>Id.</u>, <u>citing U.S. v. Atkins</u>, 107 F.3d 1213, 1217 (6th Cir. 1997).

### 2.    **Personal Involvement**

It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation.  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).  "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  <u>Leonard v. Poe</u>, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, a plaintiff cannot use the doctrine of respondeat superior to establish liability in a section 1983 case.

The search warrant affidavit at issue was signed by Lt. Mannion.  It is undisputed that none of the other defendants had any role in its drafting.  Commissioner Kirschner transferred authority over the investigation from Major Covello's unit (Bureau of Criminal Investigations) to Lt. Mannion's unit (Major Crime) five months before the arrest warrant application.  For this reason it is clear that neither Major Covello nor his subordinates Lt. Kasche and Sgt. Russell had any personal involvement in the drafting of the arrest warrant affidavit.  Sgt. Russell testified that at most he may have reviewed those statements in the search warrant affidavit with which he was involved.  (Russell Aff., ¶ 14.)

Likewise, both Commissioner Kirschner and Lt. Colonel McGuire testified that they were not involved in the day-to-day supervision of the investigation and did not review the search

warrant affidavit. (Kirschner Aff., ¶ 9; McGuire Aff., ¶ 6.) Even though they supervised Lt. Mannion by virtue of their position in the chain of command, an attempt to impose liability on them merely for that fact would violate the established law that the doctrine of respondeat superior may not be used to establish liability in a section 1983 case.

### 3.    Count 1 -  Larceny

The first count of the information charged the plaintiff with larceny in violation of Conn. Gen. Stat. § 53a-123. This count charged the plaintiff with taking the meat grinder. It is undisputed that the meat grinder was property of the Northstar program and that the plaintiff gave the meat grinder to his neighbor, Pasquale DiChello and that DiChello used it for his personal use. (D'Angelo Dep., p. 207.)

The plaintiff testified in his deposition that that the meat grinder needed some work and that there was "no rule or regulation that he's not entitled to that garbage." (Id., p. 208.) This is, of course, irrelevant. The statute in question provides no exceptions for defective property or makes a charge of larceny contingent on any "rule" that requires only fully functioning devices the subject of larceny.

### 4.    Count 2 – Bribe Receiving

The second count of the information charged the plaintiff with bribe receiving in violation of Conn. Gen. Stat. § 53a-148. More specifically, it charged the plaintiff with receiving a Belgian 9mm pistol, which evidence indicated was a Fabrique Nationale, serial number 9mm serial 35288. According to the information, the transaction took place "on or about" December 23, 1996.

There was ample probable cause supporting this count of the information.  On January 4, 1997, Trooper Binkowski gave a statement under oath to the CSP.  Trooper Binkowski stated that he met the plaintiff at the Northstar building on December 13, 1996 and that the conversation turned to guns.  He further stated that he told the plaintiff that he had a Belgian 9mm which had been his grandfather's.  He told the plaintiff that he could have it, since it didn't work.  The plaintiff proceeded to give Trooper Binkowski a number of items, including boots, mittens and rifle scopes.  Toward the end of the meeting, the plaintiff told Trooper Binkowski that "only special people get into his secret rooms."  Trooper Binkowski's statement then reports that he returned to the Northstar facility on December 20, 1997 to give the plaintiff the Belgian 9mm, which he did.  (Binkowski St., pp. 2-3.)  When the Northstar property was searched on January 9, 1997, the Belgian pistol was not found.  However, when a search warrant was executed at the plaintiff's personal residence, it was located.  (Search Warrant Return.)

It is of no moment that there may be a slight discrepancy in the dates between the arrest warrant affidavit and Trooper Binkowski's statement.  Likewise, it is irrelevant whether the items which Trooper Binkowski received from the plaintiff on December 13 and 20 were for his personal use or the use of the Woodbury Police Department (which he supervised as the resident trooper).  The plaintiff received personal property in exchange for public property.  There was probable cause for this count and summary judgment should enter in favor of the defendants.

### 5.    Count 3 – Larceny

The third count of the information charges the plaintiff with larceny in violation of Conn. Gen. Stat. § 53a-123.  Specifically, it accuses the plaintiff of misappropriating a pair of Steiner

Military Marine binoculars which belonged to the Northstar program during the January 9, 1997 meeting at the Northstar facility in Meriden.

There was probable cause for this count of the information. It is undisputed that the plaintiff provided these binoculars for a .45 caliber pistol owned personally by Trooper Binkowski. This transaction took place at the Northstar facility and the plaintiff stated explicitly that he received the binoculars from "somebody associated with Northstar." The conversation is very revealing when taken in context, from which it is evident that the plaintiff has acquired numerous pairs of binoculars in his capacity as a Northstar screener. The plaintiff and Trooper Binkowski had already discussed how the plaintiff would go to McGuire Air Force Base, Griffiths Air Force Base and Mechanicsburg Navy Base to get material for distribution by Northstar. (Northstar Meeting, pp. 1, 11-12.)

| D'Angelo: | That's just the Stiner [sic; Steiner] Military Marine Model. |
| Binkowski: | So you had these, these are your own, you didn't get these from um, McGuire? |
| D'Angelo: | I did but, not I got them from somebody associated with Northstar. I got two of those. Fucking Pagoni. |
| Binkowski: | One of your connections. |
| D'Angelo: | Yeah, there's a fucking Pagoni has like I think two pair of those. |
| Binkowski: | Oh, these are the ones you told me the Lt., you had a shit load of them and the Lt.'s came in- |
| D'Angelo: | 25 |
| Binkowski: | and took them. |

Dangelo:      Not even as good as that though, I have the best ones.

(Northstar Meeting, p. 13)

It is evident that the plaintiff was in the possession multiple pairs of binoculars which he obtained in his capacity as a screener for Northstar.  He obtained at least two pair (apparently the better ones) from "somebody associated with Northstar," who was also "one of [his] connections."  There is nothing to suggest that these binoculars were owned personally by the plaintiff.  All the evidence suggests that all the binoculars under discussion came from Northstar or "somebody associated with Northstar."

It is assumed that the plaintiff will raise the claim that the inventory of property provided by the Department of Defense to the Northstar program did not include any Steiner binoculars. Even if this is information that should have been included in the affidavit, it would not change the probable cause calculation in light of the plaintiff's admissions at the meeting.  In other words, if one were to "correct" the affidavit with this omission, probable cause would still exist.

### 6.     <u>Count 4 – Bribe Receiving</u>

The fourth count of the information charges the plaintiff with bribe receiving in violation of Conn. Gen. Stat. § 53a-148.  This count charged the plaintiff with Trooper Binkowski's .45 pistol in exchange for the Steiner binoculars.  The affidavit supports probable cause in that Binkowski gave the plaintiff his own property in exchange for property that arguably belonged to the Northstar program.  For the reasons set forth above, any failure to mention that these binoculars were not listed on the Northstar inventory sheet provided by the Department of

Defense is irrelevant in light of the plaintiff's admission that he got them from "someone associated with Northstar."

**B.     There are no Material Issues of Fact Concerning the Plaintiff's Claims of Malicious Prosecution**

In Connecticut, a state law malicious prosecution cause of action requires allegations that "1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; 2) the criminal proceedings have terminated in favor of the plaintiff; 3) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; and 4) the defendant acted without probable cause . . . ." Mulligan v. Rioux, 229 Conn. 716, 731-32 and notes 19-20, 643 A.2d 1226 (1994), citing Zenick v. O'Brien, 137 Conn. 592, 79 A.2d 769 (1951). With regard to the third element, the existence of probable cause is an absolute protection. Matters surrounding the sufficiency of probable cause are always questions of law. Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 98 (1978). It has been shown that there existed probable cause for the arrest of the plaintiff. For this reason, summary judgment should enter on behalf of the defendants.

Concerning the plaintiff's federal malicious prosecution claim, Section 1983 law requires that the plaintiff prove the elements of a state malicious prosecution claim and that there has been a violation of his right to be free from unreasonable search and seizure. Singer v. Fulton County Sheriff, 63 F.2d 110, 116-117 (2d Cir. 1995). The plaintiff's state law malicious prosecution claim having been shown to be without merit, summary judgment should enter on behalf of the defendants on the federal claim as well.

C.    **There are no Material Issues of Fact Concerning the Plaintiff's Claims of  Unreasonable Search and Seizure**

The plaintiff's complaint makes reference to a search warrant that the CSP executed on "on or about January 13, 1997" at the plaintiff's residence.  (Complaint, ¶ 18.)  The complaint further alleges that Major Covello obtained the search warrant.  (Id.)  Defendant Covello has no recollection of obtaining a search warrant on that or any other date.  Diligent investigation by the CSP has identified only one search warrant in this case.  That was a search warrant sought by Detective Edward Kushner on January 23, 1997.  This warrant authorized a search of the plaintiff's residence to seize only the Fabrique National 9mm pistol.  The plaintiff's complaint does not reference this search and Detective Kushner is not a defendant.

There was a search of the Northstar facility in Meriden on January 13 and 14, 1997.  That facility was state property.  It is well-established that a search warrant is not required in such circumstances.  See, e.g., O'Connor v. Ortega, 480 U.S. 709, 718 (1987).

D.    **There are no Material Issues of Fact Concerning the Plaintiff's Claims of Conspiracy**

Without any specificity whatsoever, the complaint alleges that all of the defendants conspired together to deprive him of his constitutional rights.  This claim is insufficient primarily because a claim of conspiracy fails when there is no underlying constitutional violation.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).

16

E.    **There are no Material Issues of Fact Concerning the Plaintiff's Claims of Defamation, Recklessness, and Invasion of Privacy**

The plaintiff next asserts that the defendants engaged in defamation by virtue of statements they made in support of the arrest warrant, with respect to the investigation, and their having caused articles published in the Hartford Courant and "other newspapers." (Complaint, ¶ 29.)  Summary judgment in favor of the defendants is appropriate for this count.

First, with respect to the arrest warrant it has been demonstrated that there was probable cause. Since the defendants were legally entitled to apply for an arrest warrant when there was probable cause, this conduct cannot give rise to a claim of defamation.

Second, with respect to any statements made in the context of the Internal Affairs investigation, Connecticut law provides that such statements are accorded an absolute privilege. In Craig v. Stafford Construction, Inc., 271 Conn. 78, 856 A.2d 372 (2004), the Connecticut Supreme Court held that statements made in the context of a Hartford Police Department internal affairs investigation were absolutely privileged.   The court reasoned that certain internal affairs investigation are "quasi-judicial" in nature.  The court stated that the following factors were relevant in determining whether a hearing was "quasi-judicial" is whether a body has the power to: (1) exercise judgment and discretion; (2) hear and determine or ascertain facts and decide; (3) make binding orders and judgment; (4) affect the personal property rights of private person; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties.  Craig, 271 Conn. at 78 (citing Kelley v. Bonney, 221 Conn. 549, 565-66.)  It is clear that the CSP internal affairs process in place at the time should be afforded quasi-judicial

status.  This has been the conclusion of two Superior Court cases: <u>Arigno v. Murzin</u>, 1998 Conn. Super. LEXIS 691 (attached as Ex. A) and <u>Bieluch v. Smith</u>, 1993 Conn. Super. LEXIS 1319 (attached as Ex. B.)

Third, the plaintiff was asked at his deposition concerning alleged false statements made by the defendants.  He conceded that all of the false statements allegedly made were in the course of the investigation of the criminal wrongdoing and the Internal Affairs investigation, with one exception.  (D'Angelo Dep., pp. 29-32.)  The one exception is a statement he attributes to defendant Mannion.  He claims that defendant Mannion made a statement at his (Mannion's) retirement party.  "Oh, it was something to the effect that between Gene D'Angelo and F. Mac Buckley, Mac Buckley, whatever, that they both stole from the state and got away with it."  (<u>Id</u>., p. 30.)  It is well-established that truth is a defense to a defamation action.  <u>Cweklinsky v. Mobil Chemical Co.</u>, 267 Conn. 210, 228-229, 837 A.2d 759 (2004).  The plaintiff concedes that he gave away (i.e., stole) state property (a meat grinder) to a friend for his personal use.  Given that the charges were dismissed, the plaintiff "got away with it."

Based on the above, it is clear that the plaintiff's claim of invasion of privacy, <u>viz</u>. that the defendants caused to be published false information about him also fails. (Complaint, ¶¶ 28-33.)   The defendants have all testified that they did not talk to the Hartford Courant or other medial outlets concerning the plaintiff's tenure at Northstar.  That newspapers reported the plaintiff's legal and ethical troubles is not sufficient to state a claim for invasion of privacy.  <u>See</u>, <u>e.g</u>., <u>Goodrich v. Waterbury Republican-American</u>, 188 Conn. 107, 448 A.2d 1317 (1982).

**F.     The are no Material Issues of Fact Concerning the Plaintiff's Claims of <u>Intentional Infliction of Emotional Distress</u>**

The plaintiff alleges that the defendant intentionally inflicted emotional distress on him. The elements of the tort of intentional infliction of emotional distress requires the following four elements: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986).

The plaintiff has not shown that the defendant's actions were extreme and outrageous. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  <u>Bell v. Board of Education</u>, 55 Conn. App. 400, 410 (1999).  This standard is extremely high.  "Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" <u>Carrol v. Allstate Ins. Co.</u>, 262 Conn. 433, 443 (2003).  Applying for an arrest search warrant when there is probable cause obviously is not extreme and outrageous.

To the extent that the plaintiff alleges that the defendants made statement in the context of the Internal Affairs investigation, such statements would be privileged and therefore could not form the basis of an intentional infliction of emotional distress claim. This was the holding of the Superior Court in <u>See</u> <u>Bieluch v. Smith</u>, <u>supra</u>.

### G.    The Plaintiff is Barred From Bringing This Action Based on the Stipulated Agreement he Signed on March 12, 1998

On March 12, 1998, the plaintiff and the CSP signed a Stipulated Agreement in which he agreed that the Internal Affairs charges against him would be sustained. The plaintiff further agreed that: (1) he would receive a forty-five day suspension; (2) he would not grieve the issues raised in connection with the Agreement; (3) he would retire on May 1, 1998; and (4) he "waives his right to file any and all civil or administrative claims related to this matter." (Stipulation.)

The claims raised in this complaint are all related to the matters raised in the Internal Affairs investigation because they all concern the plaintiff's tenure at Northstar. This complaint is therefore a "civil claim" which is "related" to the matters addressed in the Stipulation. The CSP permitted the plaintiff to retire (rather than be terminated) as a CSP trooper in exchange for giving up his right to bring later lawsuits. To allow the plaintiff to, for example, sue these defendants for intentionally inflicting emotional distress on him as a result of statements made in the Internal Affairs investigation would circumvent the clear intent and language of the Stipulation.

### H.     The Defendants are Protected by the Doctrine of Qualified Immunity

The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  The Second Circuit has described the circumstances where qualified immunity would apply as follows:

> a government official sued in his individual capacity … is entitled to qualified immunity in any of three circumstances:  (1) if the conduct attributed to him is not prohibited by federal law …; or (2) where the conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct …; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] … in light of the legal rules that were clearly established at the time it was taken.'  These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right.  The unlawfulness must be apparent.  McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted).  In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful.  Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

With the exception of defendant Mannion, none of the defendants had any direct role in the drafting of the search warrant affidavit.  Lt. Mannion stated that he reviewed the arrest

warrant affidavit with State's Attorney Michael Dearington.  There is undoubtedly probable cause with respect to the counts concerning the meat grinder and the Belgian 9mm.  With respect to the counts concerning the Steiner Military Marine binoculars, Lt. Mannion relied upon Attorney Dearington's opinion that the probable cause existed to believe that the binoculars were property of the Northstar program.  In addition, it is undisputed that the plaintiff stated that he received the binoculars from "somebody associated with Northstar."  In light of that fact and his reasonable reliance on State's Attorney Dearington's professional judgment, it was objectively reasonable for Lt. Mannion to believe that probable cause existed.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the defendants respectfully urge the their motion for summary judgment be granted.

DEFENDANTS,
Kenneth Kirschner, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:____/s/_____
        Neil Parille
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar No. ct15278
        Telephone No.:  (860) 808-5450
        Fax No.:  (860) 808-5591
        Email:  neil.parille@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid

to the following on this 31st day of August 2005:

Jon Golas, Esq.
Golas, Golas & Golas, PC
945 Main Street, Suite 306
Manchester, CT  06040

                                       _\_/s/_____
                                       Neil Parille
                                       Assistant Attorney General