UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EUGENE D'ANGELO                                NO. 3:02CV1313(SRU)
    Plaintiff

VS.

KENNETH KIRSCHNER, ET AL.
    Defendants                              August 22, 2005

## AFFIDAVIT OF RICHARD G. COVELLO

STATE OF CONNECTICUT        )
                               ss. Hartford, Connecticut
COUNTY OF HARTFORD          )

I, Richard G. Covello, being of sound mind and legal age, and having been duly sworn, do hereby depose and say that:

1. I am a defendant in the above reference action.

2. I was employed by the Connecticut State Police from 1967 to 1997.

3. I am familiar with the plaintiff Eugene D'Angelo and the allegations that he has raised in this lawsuit.

4. At the time of the events in question, I held the rank of Major. I was assigned as the Commanding Officer of the Bureau of Criminal Investigations (BCI).

5. In early 1997 I heard rumors that Trooper Binkowski was complaining to fellow troopers that Trooper D'Angelo was trading Northstar federal property for personal gain. I reported this to Commissioner Kirschner.

6. Commissioner Kirschner asked me to investigate this matter. I assigned Lt. Kasche and Sergeant Russell, both members of my command, to interview Trooper Binkowski. They took a written statement from Trooper Binkowski.

7. Based on Trooper Binkowski's statement, I had reason to believe that Trooper D'Angelo was engaged in conduct that appeared to violate the code of conduct of the Connecticut State Police. I reported all information to Commissioner Kirschner, who required that we conduct further investigations.

8. Lt. Kasche and Sgt. Russell provided Trooper Binkowski a micro cassette recorder to tape any phone conversation to him from Trooper D'Angelo in the event that Trooper D'Angelo attempted to pursue the trade of Northstar property for personal property of Trooper Binkowski.

9. Lt. Kasche and Sgt. Russell reported that Trooper Binkowski did on or about January 7, 1997 record a telephone conversation from Trooper D'Angelo in which arrangements were made to meet at Northstar to make the exchange.

10. I advised Commissioner Kirschner of these developments. He instructed that the meeting would be monitored and if the exchange took place, the matter would be turned over to the Central District Major Crime Unit for any additional investigation or action.

11. I instructed Lt. Kasche and Sgt. Russell to cover and document the meeting and the Commissioner's intentions if a trade took place. The meeting took place and it appeared that Trooper D'Angelo attempted to trade Northstar property for a personally owned firearm of Trooper Binkowski.

12. Following this event the investigation was turned over to Central District Major Crime under the command of Lt. Mannion. On or about January 10, 1997 a meeting was held in the BCI conference room with Commissioner Kirschner, Lt. Mannion, Lt. Kasche, Sgt. Russell and I. All information then available at the Bureau of Criminal Investigation was turned over to Lt. Mannion. To the best of my knowledge, neither I nor any member of my staff had any involvement in the criminal investigation.

13. I had no role in the drafting of the search warrant or arrest warrant affidavits. To the best of my knowledge I did not discuss the case with either Lt. Mannion or State's Attorney Dearington while the case was pending.

14. The State Police Internal Affairs Unit conducted an investigation of Trooper D'Angelo's conduct. This investigation was separate from the criminal investigation. Neither I nor anyone under my command worked for Internal Affairs.

15. The State Police Internal Affairs Unit did contact me for an interview on one occasion. I provided them the information I had. I also sent a memo to Commissioner Kirschner as requested, concerning my knowledge of this matter up to the criminal investigation by Major Crime.

16. At no time did I individually or as part of a conspiracy with anyone maliciously prosecute, falsely arrest, unreasonably search the property of or defame Trooper D'Angelo.

17. At no time did I direct anyone to omit information, material or otherwise, from any search warrant or arrest warrant application concerning Trooper D'Angelo.

18. To the best of my knowledge I did not discuss the investigation of Trooper D'Angelo with the Hartford Courant or any other media organization.

19. I did not sign a search warrant application for Trooper D'Angelo's personal residence or take part in any search of his residence.

20. During the investigation of the conduct of Trooper D'Angelo I obeyed all laws.

_____
Richard G. Covello

Subscribed and sworn to before me the 23rd day of August 2005.

_____
Pamela D Pelletier
Notary Public
My Commission expires: 7/31/2010