UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE D'ANGELO<br>*Plaintiff,* | : NO. 3:02CV1313(SRU)<br>:<br>: |
| VS. | :<br>: |
| KENNETH KIRSCHNER, ET AL.<br>*Defendants.* | :<br>: AUGUST 24, 2005 |

### AFFIDAVIT OF KENNETH H. KIRSCHNER

STATE OF CONNECTICUT   )
                       ) s.s. Hartford, Connecticut
COUNTY OF HARTFORD     )

I, Kenneth H. Kirschner, being of sound mind and legal age, and having been duly sworn, do hereby depose and say that:

1. I am a defendant in the above-referenced action.

2. I was employed by the Connecticut State Police from February 1966 to August 1997. From January 1995 to August 1997 I was the Commissioner of the Department of Public Safety.

3. The Connecticut State Police is a division of the Department of Public Safety. As such, I supervised the Connecticut State Police and was responsible for its overall operations and management.

4. I am familiar with the plaintiff Eugene D'Angelo and the allegations that he has raised in this lawsuit.

5. In early 1997, I heard from Major Covello allegations that Trooper D'Angelo was trading Northstar material for personal property. I directed Major Covello to inquire into these allegations.

6. My principal reason for authorizing an investigation of this matter in early 1997 was the statement of Trooper Binkowski that was provided to me by Major Covello. Prior to that time I had never met Trooper Binkowski.

7. During the investigation of this case, I was informed of its general progress. Because my duties as Commissioner were extensive, I did not supervise the day-to-day investigation of this case.

8. On January 10, 1997, a meeting was held in the Bureau of Criminal Investigations office concerning this matter. At the meeting, Major Covello, Lt. Kasche and Sgt. Russell, among others, were present. At that meeting I transferred the investigation to Major Crimes Unit, which was commanded by Lt. Mannion.

9. At some point in the investigation, Lt. Mannion informed me that there was probable cause to seek an arrest warrant for Mr. D'Angelo. Although I authorized Lt. Mannion to seek an arrest warrant, I did not draft or review the arrest warrant affidavit.

10. I authorized an Internal Affairs investigation into the conduct of Trooper D'Angelo because there was reason to believe that his conduct constituted a violation of his ethical obligations as a Connecticut State Police Trooper. I had no role in the Internal Affairs investigation. I was interviewed by Internal Affairs as part of their investigation on September 9, 1997

11. At no time did I individually or as part of a conspiracy with any of the defendants maliciously prosecute, falsely arrest, defame or unreasonably search the property of Mr. D'Angelo.

12. At no time did I direct anyone to omit information, material or otherwise, from any search warrant or arrest warrant application concerning Mr. D'Angelo.

13. At no time did anyone ask me to direct Lt. Mannion to add or omit information from the arrest warrant application.

14. To the best of my recollection, I did not speak to the Hartford Courant or any other media organization concerning the investigation or prosecution of Mr. D'Angelo.

15. During the investigation of the conduct that lead to the arrest of Mr. D'Angelo, I obeyed all laws.

_____
Kenneth H. Kirschner

Subscribed and sworn to before me this 24th day of August, 2005.

_____
Neil Parille
Commissioner of the
Superior Court