UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE D'ANGELO<br>*Plaintiff,* | : | NO. 3:02CV1313(SRU) |
| | : | |
| VS. | : | |
| | : | |
| KENNETH KIRSCHNER, ET AL.<br>*Defendants.* | : | AUGUST 25, 2005 |

**AFFIDAVIT OF ANDREW RUSSELL**

STATE OF CONNECTICUT     )
                                                  ) s.s. Hartford, Connecticut
COUNTY OF HARTFORD     )

I, Andrew Russell, being of sound mind and legal age, and having been duly sworn, do hereby depose and say that:

1. I am a defendant in the above-referenced action.

2. I was employed by the Connecticut State Police from 1982 to 2003.

3. I am familiar with the plaintiff Eugene D'Angelo and the allegations that he has raised in this lawsuit . During the time of the events at question I held the rank of Sergeant.

4. I first became involved in the inquiry of Mr. D'Angelo's administration of the Northstar program on January 3, 1997 when Major Richard Covello, Commanding Officer of the Bureau of Criminal Investigations, assigned Lt. Kasche and me to investigate allegations that then-Detective D'Angelo was trading Northstar property for personal benefit. At the time, Det. D'Angelo was assigned to the Statewide Narcotics Task Force.

1

5. On January 3, 1997, I contacted Trooper First Class Richard Binkowski, then the resident trooper for Woodbury, by telephone and asked him if he had knowledge of wrongdoing by Mr. D'Angelo concerning his administration of the Northstar program. Trooper Binkowski indicated that he did, and I then directed him to report to Central Criminal Intelligence to provide a statement.

6. On January 4, 1997, Lt. Kasche and I interviewed Trooper Binkowski about the allegations. Trooper Binkowski confirmed what we had heard, namely that Mr. D'Angelo was trading Northstar property for personal benefit. Trooper Binkowski gave us a statement to this effect.

7. On January 7, 1997, Lt. Kasche and I, with the approval of Major Covello, met with Trooper Binkowski to provide him with a microcassette tape to record an anticipated telephone conversation between him and Mr. D'Angelo. It was anticipated that the issue of trading a firearm personally owned by Trooper Binkowski for Northstar equipment would come up in that conversation.

8. On January 7, 1997 at approximately 7:30 p.m. Trooper Binkowski contacted me stating that he had recorded the anticipated telephone conversation with Mr. D'Angelo.

9. On January 8, 1997, Trooper Binkowski met with Lt. Kasche and me to turn over the tape recording. Upon listening to the tape, it became evident that Mr. D'Angelo was willing to exchange Northstar property for a firearm owned personally by Trooper Binkowski.

10. On January 8, 1997, Major Covello authorized the recording of the anticipated exchange between Trooper Binkowski and Mr. D'Angelo.

11. On January 9, 1997, Trooper Binkowski met with Mr. D'Angelo at the Northstar program site at the Altobello Complex in Meriden. The meeting lasted between 7:30 p.m. and 7:35 p.m. In accordance with Major Covello's order, this meeting was monitored and taped.

12. On January 10, 1997, Lt. Kasche, Major Covello and I had a meeting with Commissioner Kirschner. We advised Commissioner Kirschner about the results of our investigation.

13. Shortly thereafter, a decision was made to have this investigation handled by the Major Crimes Squad of the State Police. I had no role in this decision. I was not a member of the Major Crimes Squad.

14. I did not have any involvement in the drafting of any search warrant affidavit or the arrest warrant affidavit. Lt. Mannion asked me to review a draft of the arrest warrant affidavit with respect to those activities with which I was involved.

15. I was not contacted by anyone in the Connecticut State Police or the State's Attorneys Office concerning the subsequent course of the criminal investigation, with the exception noted above.

16. I was interviewed by Internal Affairs unit of the Connecticut State Police concerning Mr. D'Angelo's conduct.

17. At no time did I individually or as part of a conspiracy with any of the defendants maliciously prosecute, falsely arrest, defame or unreasonably search the property of Mr. D'Angelo.

18. At no time did I direct anyone to omit information, material or otherwise, from any search warrant or arrest warrant application concerning Mr. D'Angelo.

19. During the investigation of the conduct that lead to the arrest of Mr. D'Angelo, I obeyed all laws.

20. I did not discuss this matter with the Hartford Courant or any other media organization.

_____
Andrew Russell

Subscribed and sworn to before me this 25th day of August, 2005.

_____
Neil Parille
Commissioner of the
Superior Court