UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE D'ANGELO, | : | Case No. 3:02CV1313(SRU) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH KIRSCHNER, et al. | : | |
| Defendants. | : | October 24, 2005 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR**
**SUMMARY JUDGMENT**

This is a case in which the plaintiff contends that the defendants omitted exculpatory information form the arrest warrant application and the search warrant application leading to his false arrest without probable cause. In response the defendants attempt to show that they put accurate information into the arrest warrant application and the search warrant application.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no

**ORAL ARGUMENT REQUESTED**

genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant...Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F. 3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion as trial." Trainor v. Apollo Metal Specialties, Inc., 318 F. 3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F. 3d 420

(3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F. 2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F. 3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need to match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and in In re Japanese Elec Prods. Antitrust Litigation, 723 F. 2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

The defendants as the moving party have failed to fulfill their initial burden of providing admissible evidence of material facts entitling them to summary judgment. The defendants have not provided the court with admissible evidence as has been stated in the Plaintiff's Motion to Strike Exhibits, Motion to Strike Affidavits and Motion to Strike Local 56(a)(1) Statement.

The plaintiff has provided the court with evidence that the defendants omitted exculpatory evidence from the arrest warrant and the search warrant that led to the plaintiff's false arrest. Trooper Binkowski gave three or more statements to the defendants yet they only included statements from him dated January 4, 1997. The defendants omitted trooper Binkowski's February 3, 1997 statement from the arrest warrant in which Binkowski stated that, "my first visit with TFC D'Angelo, he asked me what I collected and related that he collected WW II items and guns. TFC D'Angelo stated that he repaired old guns and took parts from broken guns and made one working gun from several broken guns. After TFC D'Angelo told me this I told him that I had several old and broken guns at home and that when I returned I would bring him a pistol, that I felt was no good and that I believed did not work for his collection." See Binkowski Statement dated 2/3/97, Plaintiff's Exhibit 3. This information is exculpatory as it tends to show that D'Angelo was not accepting items for his own personal use in exchange for Northstar equipment. In addition Binkowski states, "My intent in offering this gun to TFC D'Angelo was in hopes of continuing to be allowed to get the good equipment for the Woodbury Police Officers and myself." See Binkowski Statement dated 2/3/97, Plaintiff's Exhibit 3. This information shows that Binkowski, not D'Angelo had the intent to trade.

There are factual inconsistencies in Binkowski's statement dated 2/3/97 and Major Covello's internal affairs interview.  In Binkowski's statement dated 2/3/97 he states that he was told instructed to tape a telephone call and was told to make up a story about guns.  Furthermore, he was told to set up a meeting to exchange a weapon and he was instructed to get anything he could in exchange for the 45 caliber pistol.   See Binkowski Statement dated 2/3/97.  This evidence conflicts with Major Covello's testimony to internal affairs were he stated that the strategy would be for Binkowski not to go anywhere near D'Angelo, Binkowski was to wait for D'Angelo to come to him.  See Major Covello's Internal Affairs interview pgs. 19-21, Plaintiff's Exhibit 2.  This information shows that D'Angelo was being set up by the defendants'.

On January 15, 1997 the defendants had information that Binkowski had not been entirely truthful and they failed to disclose this information.  Captain Manfred Brideau stated under oath to internal affairs that on January 15th, 1997 he called Colonel McGuire and McGuire stated, "Binkowski has not been entirely truthful in this investigation, therefore all promises made by the Commissioner are off."  See Manfred Brideau's Internal Affairs interview pgs.6-7., Plaintiff's Exhibit 21.

Manfred Brideau testified to internal affairs that shortly after the Northstar investigation started "Binkowski came into my office, very upset, ah, because he had just come a rather lengthy interview with Lt. Mannion and at that time ah, again, he was

6

threatened with a arrest and ah, ah, discipline if he didn't cooperate fully." See Manfred Brideau's Internal Affairs interview pg. 9, Plaintiff's Exhibit 21.

Dennis Sullivan and Robert Milslagle were both present at the Northstar complex in Meriden on December 23, 1996 when trooper Binkowski was present. Both Sullivan and Mislagle heard D'Angelo say that he wanted to buy the gun from Binkowski and that Binkowski had given him another gun. See plaintiff's exhibits 6,7, 8 and 9. Both Sullivan and Milslagle stated they informed the state police investigators of what they witnessed and heard on December 23, 1996 between Binkowski and D'Angelo, but this information was never put into the warrant. See Deposition of Dennis Sullivan, Plaintiff's Exhibit# 19 and Deposition of Robert Milslagle, Plaintiff's Exhibit #20.

Tsgt. Zane Tyler told the state police investigators that "the 'Steiner' binoculars with the designator '8907 M-22' did not appear to be a Northstar item and that, according to his records, it did not appear that the Connecticut State Police received any 'Steiner' binoculars through the Northstar program." See Continuation of Investigative report Re: TSgt. Zane Tyler dated 4/28/97, Plaintiff's Exhibit 12. This information is exculpatory and should have been placed in the warrant because it tends to show that the "Steiner" binoculars were not Northstar property and were D'Angelo's own personal binoculars.

The defendants failed to include in the warrant that Binkowski was a screener for Northstar and he had the same authority and access to military equipment as D'Angelo did. In fact Binkowski and D'Angelo as fellow screeners were allowed to trade Northstar

7

equipment with each other. See Witness statement from Sgt. Dan Jewiss dated 8/26/97. This fact shows that D'Angelo was not defrauding the public community when he gave items to Binkowski as Binkowski was a fellow screener entitled under the rules to the equipment.

     John Mannion admitted in his deposition that at the time of the warrant he did not know if the "Steiner" binoculars were in fact Northstar equipment. See Deposition of John Mannion dated 5/12/05 and 6/14/05, Plaintiff's Exhibits 14 and 15. This was important exculpatory evidence which should have been disclosed as the warrant was alleging D'Angelo traded Northstar equipment for a gun for his own personal use. In fact, in response to his attorney's question, whether he included all of the material facts about the origin of the Steiner binoculars that he had in the arrest warrant application, John Mannion answered no. See Deposition of John Mannion, Plaintiff's Exhibit 15, pg. 111. There exist factual inconstancies in John Mannion's deposition and his interview with internal affairs. At his deposition John Mannion stated that he never told internal affairs that he could not establish criminal intent on behalf of D'Angelo. In fact Mannion stated that he never told anyone anything about intent. See Deposition of John Mannion, Plaintiff's Exhibit 15, pg. 97. In John Mannion's interview with Internal Affairs he stated that he told D'Angelo, "that we could not establish any intent outside the initial Binkowski/D'Angelo conversation and gun exchange. That there was no other evidence or corroboration of intent to exchange North Star equipment for personal gain, that we

8

uncovered besides what we initially knew with regards to Binkowski and Gene." See Internal Affairs Interview of John Mannion dated 10/17/05 pgs. 11-13, Plaintiff's exhibit 17.  This information regarding the lack of intent was exculpatory information which should have been included in the arrest warrant application.

A civil conspiracy can be proved entirely by circumstantial evidence.  Hampton v. Hanrahan, 600 F.2d. 600, 621 (7th Cir. 1979); Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872,85 (7th cir. 1971); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283 (9th Cir. 1999); Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980); Rutledge v. Electric Hose & Rubber, 327 F. Supp. 1267, 1273 (C.D. Calif. 1971); Lyle v. Teresi, 327 F.Supp. 683, 684 (D. Minn. 1971).  "Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means.  If it is proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object.  Regina v. Murphy, 8 C. & P. 297, 310 (1837) (Coleridge, J.).  See Pierce v. United States, 252 U.S. 239, 250 (1919).

There is nothing in the facts before this court which could support a claim of qualified immunity for this defendant.

For all of the foregoing reasons and the reasons that will be set forth at oral argument the plaintiff requests that summary judgment be denied.

                                            THE PLAINTIFF,
                                            Eugene D'Angelo

By:     _____
           Jon D. Golas
           Federal Bar Number: ct23324
           Golas, Golas & Golas, P.C.
           945 Main Street, Suite 306
           Manchester, CT 06040
           Tel.#(860) 646-4545
           Fax#(860) 646-8604
           His Attorney

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been Hand Delivered to the following counsel of record this 24th day of October 2005.

Neil Parille
Lynn D. Wittenbrink
Assistant Attorney Generals
110 Sherman Street
Hartford, CT 06105

                                                  Jon D. Golas
                                                  Golas, Golas & Golas, P.C.
                                                  945 Main Street, Suite 306
                                                  Manchester, CT 06040