UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE D'ANGELO | : | NO. 3:02CV1313(SRU) |
| *Plaintiff,* | : | |
| | : | |
| VS. | : | |
| | : | |
| KENNETH KIRSCHNER, ET AL. | : | |
| *Defendants.* | : | NOVEMBER 10, 2005 |

**THE DEFENDANTS' REPLY TO THE PLAINTIFF'S
OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT**

The defendants hereby respond to the plaintiff's objection to their motion for summary judgment dated October 24, 2005.

**I.   ARGUMENT**

    **A.   THE PLAINTIFF'S HAS NOT RESPONDED TO THE DEFENDANTS' ARGUMENT WITH THE EXCEPTION OF FALSE ARREST**

On August 31, 2005, the defendants moved for summary judgment asserting that there were no material issues of fact in dispute concerning the various causes of action raised in the plaintiff's complaint: false arrest, malicious prosecution, defamation, recklessness, invasion of privacy, intentional infliction of emotional distress, and unlawful search and seizure. The plaintiff's ten-page memorandum in opposition to the defendant's motion for summary judgment does not mention any of the causes of action with the exception of false arrest, apparently conceding that judgment is the defendants' favor on the remaining causes of action. In the plaintiff's Local Rule 56(a)(2) statement his only statement of fact is: "The defendants' [sic]

omitted exculpatory information from the arrest warrant and the search warrant leading to his false arrest without probable cause." (Pl.'s Local Rule 56(a)(2) Statement, p. 13.)

In addition, the memorandum does not mention three of the defendants (Kasche, Russell, and Kirschner). The plaintiff presents no evidence tending to show that anyone other than Lt. Mannion had any role in the drafting of the search warrant affidavit that lead to the plaintiff's arrest.

The plaintiff has chosen to discuss only one issue: whether defendant Mannion omitted exculpatory evidence from the arrest warrant affidavit. And even with respect to that question, the plaintiff does not challenge the fact that he gave the meat grinder (which was undisputedly Northstar property) to his neighbor Pasquale DiChello for his personal use.

### B. IF THE ARREST WARRANT AFFIDAVIT IS "CORRECTED" WITH THE INFORMATION ALLEGEDLY OMITTED, PROBABLE CAUSE STILL EXISTED

As the defendants pointed out in their memorandum of law, the applicable standard is whether arguable probable cause existed even if the allegedly omitted information were included in the affidavit. (Defs.' Mem at 7-8.) If the affidavit, once "corrected," still provides a sufficient basis for probable cause, the plaintiff's false arrest claim fails. It is not sufficient for the plaintiff merely to argue, as he has done here, that allegedly exculpatory information was omitted without demonstrating that this evidence (if included) would have precluded a finding of probable cause.

The plaintiff first argues that the following information from Trooper Binkowski's February 3, 1997 statement should have been included in the arrest warrant. (Pl.'s Mem. at 5.)

> My first visit with TFC D'Angelo, he asked me what I collected and related that he collected WW II items and guns. TFC D'Angelo stated that he repaired old guns and took parts from broken guns and made on working gun from several broken guns. After TFC D'Angelo told me this I told him that I had several old and broken guns at home and that when I returned I would bring him a pistol, that I felt was no good and that I believed did not work from his collection.

Even if this is a statement that should have been included in the arrest warrant affidavit, it does not alter the fact that arguable probable cause existed. That the plaintiff collected and repaired guns does not impact in the least whether on the specific occasions mentioned in the arrest warrant application he traded Northstar property for Trooper Binkowski's weapons.

The plaintiff next argues that there are inconsistencies between Trooper Binkowski's February 3, 1997 statement and Major Covello's November 12, 1997 Internal Affairs interview. (Pl.'s Mem. at 6.) This is irrelevant since any statements made in the Internal Affairs interview were months after arrest warrant application. (Pl.'s Ex. 2.) Actually, Major Covello's statement does not contradict Trooper Binkowski. Major Covello stated that he told Binkowski not to go anywhere near the plaintiff until the plaintiff called him, which is what happened. (See Pl.'s Ex. 2 at p. 20.)

The plaintiff next points to Captain Manfred Brideau's statement to Internal Affairs on October 8, 1997. (Pl's Mem. at 7.) Again, this postdates the arrest warrant affidavit. In any event, it is unclear how the statements attributed to McGuire (that Binkowski had not been entirely truthful during the investigation) or the conduct of Mannion (that he threatened Binkowksi with arrest) are relevant to whether there was probable cause to arrest the plaintiff.

More importantly, Capt. Brideau was not under oath at the time., Pl.'s Ex. 21 at p. 1., and therefore his statements about what Binkowski and McGuire told him are hearsay.

The plaintiff also argues that Meriden detectives Sullivan and Milslagle were present at the Altobello Complex on December 23, 1996 and heard the plaintiff offer to buy a gun from Trooper Binkowski. (Pl.'s Mem. at 7.) The plaintiff asserts that they informed the CSP of this. Even if this information should have been included in the arrest warrant affidavit it does not preclude a finding of probable cause. That two people were present who claimed not to have witnessed criminal acts does not negate the fact that there was probable cause based on the information from Trooper Binkowski that was referenced in the affidavit.

The plaintiff next asserts that Trooper Binkowski was also a "screener" for Northstar and that he had the same authority to access military equipment as the plaintiff. The plaintiff points to a witness statement from Sgt. Dan Jewiss dated August 26, 1997, which is three months after the arrest warrant affidavit. (Pl.'s Ex. 18.) It is not entirely clear how the plaintiff believes this information impacts the probable cause determination at the time it was made. The evidence included in the arrest warrant affidavit indicated that the plaintiff traded Northstar property for the personal property of Trooper Binkowski. If Trooper Binkowski was "entitled" to the equipment and intended to use it for legitimate state uses, he would not have had to trade personally owned firearms for it. In addition, the agreement between the State of Connecticut and the United States Government prohibited bartering or trading of equipment. (See Defs.' Ex. L, p.2.) Moreover, it is undisputed that the military equipment was under the control of and in

the possession of the plaintiff. Thus, probable cause would have existed if he attempted to improperly trade it even if Binkowski was already "entitled" to it.

Finally, the plaintiff asserts that there existed exculpatory evidence concerning whether the Steiner binoculars were property of the Northstar program. (Pl.'s Mem. 7, 8-9.) The plaintiff references a statement by Sgt. Zane Tyler (an employee of the Department of Defense) in which he stated that he could not confirm that any Steiner binoculars were provided to the Northstar program. Although this evidence may be exculpatory, it does not impact the finding of probable cause. As the defendants showed in detail in their memorandum of law, there was evidence based on the plaintiff's own statement that the binoculars were Northstar property. (See Defs.' Mem. at 12-15.) The plaintiff stated during the January 9, 1997 meeting that he got the binoculars "from somebody associated with Northstar." (Defs.' Mem at 13.) While Sgt. Tyler's statement perhaps makes it less likely that the case against the plaintiff would have been proved beyond a reasonable doubt, it does not change the fact that there was probable cause to believe that the binoculars were Northstar property. Likewise, defendant Mannion's subjective belief concerning whether he could ultimately prove ownership or intent, see Pl.'s Mem at 8-9, does not change whether probable cause existed to support an arrest.

### C. THERE ARE NO MATERIAL ISSUES OF FACT IN DISPUTE CONCERNING THE DEFENDANTS' LACK OF INVOLVEMENT IN THE SEARCH WARRANT

In the plaintiff's complaint, he states that Major Covello obtained a search warrant that the CSP executed at his residence "on our about January 13, 1997." (Complaint, ¶ 18.) The

5

defendants have presented evidence that the only search warrant in this case was sought by Detective Kushner on January 23, 1997. Although the plaintiff denies this in his response to the defendants' Local Rule 56 Statement, see plaintiff's Response at ¶¶ 22 and 23, he presents no evidence of an additional search warrant or that any of the defendants had a role in securing any search warrant.

### D.    LIEUTENANT MANNION IS ENTITLED TO QUALIFIED IMMUNITY

The defendants asserted in their memorandum of law that each defendant is entitled to qualified immunity. The defendants showed that other than Lt. Mannion, none had significant involvement in the drafting of the affidavit. The plaintiff does not appear to contest that defendants Kirschner, Kasche, McGuire, Russell and Covello are entitled to qualified immunity. However, the plaintiff does say, "[t]here is nothing in the facts before the court which could support a claim for qualified immunity for this defendant," apparently referring to Lt. Mannion. (Pl.'s Mem. at 9.) However, as the defendants demonstrated in their memorandum of law, defendant Mannion is entitled to qualified immunity because he relied on the advice of State's Attorney Michael Dearington that probable cause existed based on all the evidence that was available to Lt. Mannion. (Defs.' Mem. at 21-22.) Moreover, as long as reasonable law enforcement officials could differ as to whether or not Lt. Mannion's behavior regarding the warrant was reasonable, qualified immunity inures.

II.     **CONCLUSION**

For the reasons set forth above and also in the defendants' memorandum of law dated August 31, 2005, the defendants respectfully request that their motion for summary judgment be granted.

>                       DEFENDANTS,
>                       Kenneth Kirschner, Edward Kasche,
>                       William McGuire, Andrew Russell,
>                       John Mannion, Richard Covello
>
>                       RICHARD BLUMENTHAL
>                       ATTORNEY GENERAL
>
>
>                   BY:____/s/_____
>                       Neil Parille
>                       Assistant Attorney General
>                       Federal Bar No. ct15278
>                       110 Sherman Street
>                       Hartford, CT  06105
>                       Telephone No.: (860) 808-5450
>                       Fax No.: (860) 808-5591
>                       Email: neil.parille@po.state.ct.us

**CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid to the following on this 10th day of November, 2005:

Jon Golas, Esq.
Golas, Golas & Golas, PC
945 Main Street, Suite 306
Manchester, CT  06040

>                   ____/s/_____
>                       Neil Parille
>                       Assistant Attorney General