UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE D'ANGELO, | : | Case No. 3:02CV1313(SRU) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH KIRSCHNER, et al. | : | |
| Defendants. | : | JULY 21, 2006 |

**MEMORANDUM OF LAW IN SUPPORTOF PLAINTIFF'S
MOTION FOR RECONSIDERATION
PURSUANT TO LOCAL CIVIL RULE 7(c)**

Pursuant to Rule 7(c) of the Local Rules of Civil Procedure, the Plaintiff, Eugene D'Angelo, respectfully requests this Court to reconsider its decision to grant the defendants' motion for summary judgment and its order that judgment be entered for the defendants and the case be closed for the following reasons and others that may be heard at oral argument in connection with this matter. The plaintiff also, respectfully requests that this court reconsider its ruling to deny plaintiff's Motion to Strike Defendants' Exhibits, Motion to Strike Defendants' Local Rule 56(A)(1) Statement, and Motion to Strike Defendants' Affidavits as moot.

1. **The plaintiff request this court to reconsider its ruling to deny the plaintiff's Motion to Strike Defendants' exhibits, Motion to Strike defendants local rule 56(A)(1) statement, and Motion to Strike Defendants' Affidavits**.

At the end of oral argument on July 13, 2006 the Court stated that the above-mentioned motions were denied as moot because the court did not use any of the defendants exhibits, documents or 56(A)(1) rule statement in its decision to grant summary judgment for the defendants. After inquiry by this counsel, the court stated that it relied on the briefs submitted by the parties and the arrest warrant affidavit (Defendants Exhibit "I") in reaching its decision that summary judgment is granted to the defendants. The plaintiff moved to strike defendants exhibit "I" because exhibit "I" is not a certified copy from the Superior Court of Connecticut. The defendants have not properly submitted this document in support of their summary judgment. It is not sufficient to certify that it is a certified copy of the record that the State Police maintain. The defendants were required to obtain a certified copy from the Superior Court. The fact that the plaintiff has addressed the affidavit in his brief or has submitted the affidavit as part of a deposition in no way waives his objection. The defendants moved for the summary judgment, thus they have to show that the documents have been properly authenticated. This court should not have relied on defendants exhibit "I" in its decision to grant summary judgment. The plaintiff's motion to strike the defendants' exhibits could not have been moot if the court used exhibit "I" in its decision. Furthermore the plaintiff asks this court to reconsider its decision to grant summary judgment because the judgment dated July13th, 2006 states, "[t]he Court has <u>reviewed all of the papers filed</u> in conjunction with the motion and after a hearing held on July 13, 2006, the motion was

granted in open court." See Judgment.  It is unclear from the judgment which papers the court is referring to but it would be an error for the court to have considered any of the defendants, exhibits, affidavits or rule 56(A)(1) statement in light of the court's ruling that the plaintiff's motions to strike said materials were moot because the court did not rely on any of the defendants evidentiary submissions.

2. **The plaintiff requests that the court reconsider its decision to dismiss the plaintiff's claim for illegal search and seizure as being time-barred by the statute of limitations.**

At oral argument on July 13, 2006 the Court allowed this undersigned counsel the opportunity to address the statute of limitations issues by way of filing a supplemental brief and or memorandum of law as the statute of limitations issue was not raised by the defendants in their motion for summary judgment motion.  The statute of limitations argument was raised by the Court sua sponte approximately one hour before the oral argument.  This undersigned counsel did not have time to prepare for the statute of limitations argument before oral argument as this counsel was not notified that he was to address this issue until one hour before the oral argument.

With the opportunity to research this matter this counsel has located case law precedent which indicates that the court erred in ruling that the plaintiff's claim for illegal search and seizure (Second Claim in the plaintiff's complaint) was time-barred by the statute of limitations.  In Woods v. Candela, 47 F.3d 545 (2nd Cir. 1995), the court held that the plaintiff's Section 1983 cause of action for damages arising from a Fourth

3

Amendment violation of the right to be free from unreasonable searches and seizures did not accrue until the reversal of the plaintiff's conviction.  The Second Circuit reversed and remanded the case back to the District Court which dismissed the case ruling that the claim for unreasonable search accrued on the date of the search.   In Covington v. City of New York, 171 F.3d 117 (2nd Cir. 1999), the court held, "[i]f a favorable determination on the false arrest claim would in fact have undermined the validity of any potential conviction against Covington resulting from the state criminal proceedings, then Covington's false arrest claim would not accrue until those criminal proceedings terminated, and his false arrest claim would not now be time-barred."  The court relied on the Supreme Court case precedent of Heck v. Humphrey, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction has been invalidated."  According to the Supreme Court, "[i]n  Heck v. Humphrey, 512 U.S. 477 (1994), we held that where success in a prisoner's §1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."  Muhammad v. Close, 540 U.S. 749, 751 (2004).   In light of this case law precedent it is clear that D'Angelo's claim for illegal search and seizure did not accrue on January 13, 1997 the date of the search as this court ruled.  A favorable determination on D'Angelo's illegal search and seizure claim

4

would have undermined the validity of any potential conviction against D'Angelo resulting from the state criminal proceedings. Assuming but not conceding that none of Connecticut's tolling provisions apply, D'Angelo's claim for illegal search and seizure accrued on July 15, 1999 when the case was dismissed, thus his claim was filed within the three-year statute of limitations period for filing Section 1983 actions. D'Angelo asserts that Connecticut tolling provisions would apply to extend the start date for the statute of limitations beyond July 15, 1999. As this counsel stated at oral argument D'Angelo did not have enough information at the time of the execution of the search warrant on or about January 13, 1997 to bring suit. D'Angelo only received the face sheet of the search warrant. The search warrant indicates that the officers received judicial approval to dispense with the requirement that the affidavit be served because there was an on going investigation. D'Angelo could not in good faith bring a lawsuit on January 13, 1997 for illegal search and seizure as he did not have the supporting affidavit or any other information until well after the criminal case was dismissed on July 15, 1999. During the time of the criminal investigation and the criminal prosecution it would have been a violation of the CT Practice Book rules for D'Angelo's attorney to provide any information disclosed in the criminal matter to a civil attorney. Furthermore, the date when D'Angelo received the relevant material to learn that his rights had been violated is a factual question, which has not been developed by the defendants' in connection with their motion for summary judgment.

3.   **The plaintiff requests that the court reconsider its decision to dismiss all of the plaintiff's pendent state claims**

Since the plaintiff's federal claim for illegal search and seizure should not have dismissed by this court for failure of the plaintiff to file within the statute of limitations, this court should not have dismissed the pendent state claims pursuant to United Mine Workers v. Gibbs, 383, U.S. 715 (1966).

4.   **The plaintiff requests this court to reconsider its ruling that viewing all of the facts in the most favorable light to D'Angelo that even if the arrest warrant affidavit was corrected to disclose all of the omitted information and to eliminate all of the misrepresentations no reasonable jurors could disagree that a magistrate would have issued the warrant on the basis of the corrected affidavit for Larceny in the Second Degree in violation of CT General Statute, 53a-123(a)(4) as described in count 1 of the information alleging that D'Angelo intentionally defrauded a public community by giving his neighbor a meat grinder**.

This court examining all of the evidence in the light most favorable to, and drawing all inferences in favor of, D'Angelo is not allowed to weigh the evidence. D'Angelo's affidavit, exhibit 1, paragraph 4 states that Commissioner Kirschner "gave me permission to give the meat grinder to Pasquale DiChello." This information taken in the light most favorable to D'Angelo shows that he had authority from the state police to give the meat grinder away, thus he did not have the requisite intent to defraud the public community. Furthermore, this evidence taken in the light most favorable to D'Angelo shows that Commissioner Kirschner had a statutory duty pursuant to CT General Statutes Section 54-86c(c) to disclose this exculpatory information to John Mannion and Attorney

6

Dearington. According to CT General Statute Section 54-86c(c), "[e]ach peace officer, as defined in subdivision (9) of section 53a-3, shall disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case." . In John Mannion's interview with Internal Affairs which is before the court he stated that he told D'Angelo, "that we could not establish any intent outside the initial Binkowski / D'Angelo conversation and gun exchange. That there was no other evidence or corroboration of intent to exchange North Star equipment for personal gain, that we uncovered besides what we initially knew with regards to Binkowski and Gene." See Internal Affairs Investigative Report of John Mannion dated 10/17/97, page 12, plaintiff's exhibit 17. Mannion further stated, "I did say something about intent, that we had not up to that point established any other allegations of criminal misconduct which would show true intent on his part to deprive the agency of its North Star equipment for his own personal gain. Of course, days after this phone call, or a week or two, or even perhaps longer, we would become aware of the meat grinder involving his next door neighbor." See Internal Affairs Investigative Report of John Mannion dated 10/17/97, page 12, plaintiff's exhibit 17. This information is clearly exculpatory and should have been put into the warrant affidavit. Mannion never states that the meat grinder involving the neighbor changed the fact that the defendants could not show intent on D'Angelo's part to deprive the agency of its North Star equipment. Larceny is a specific intent crime. "Because larceny is a specific intent

7

crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing." State v. Varszegi, 33 Conn. App. 368, 372, 635 A.2d 816(1993), cert. denied, 228 Conn. 921, 636 A.2d 851 (1994). "Larceny involves both taking and retaining.  The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act . . .and without the knowing consent of the owner. . . . The requisite intent for retention is permanency." (Internal quotation marks omitted.) State v. Calonico, 256 Conn. 135, 162, 770 A.2d 454 (2001).  The facts taken in the light most favorable to D'Angelo show he had permission to give the meat grinder away and that the defendants could not show intent to deprive the agency of equipment.  This exculpatory information was omitted from the arrest warrant application.  If D'Angelo had permission to give the meat grinder away he could not have the requisite intent to commit larceny and this information would have affected the magistrate's decision to issue the warrant.

      D'Angelo's affidavit, exhibit 1, paragraph 6 states that, "I received no formal training regarding the policies and procedures associated with the Northstar program." This statement is corroborated by the continuation of investigation report Re: M/Sgt. Turner dated 4/24/97, plaintiff's exhibit 11 submitted to the court in opposition to the motion for summary judgment. Exhibit 11, page 4, paragraph 5 states, "Turner indicated that he had no formal training regarding the policies and procedures associated with the Northstar program.  Turner described it as a 'learning process' for both D'Angelo and

8

him. He also stated that D'Angelo had no formal training as to what he could and could not do. Turner never saw the Memorandum of Understanding (MOU) and thought that the items obtained could be utilized for legitimate police narcotic enforcement purposes." These facts taken in the light most favorable to D'Angelo show that D'Angelo never knew what items he was allowed to disposed of and to whom he was allowed to give theses items to. This fact shows that D'Angelo did not have the requisite intent to deprive and defraud the public community and would have changed the probable cause calculus.

 The above-mentioned omissions are especially relevant and material to the probable cause analysis when combined with the other glaring omissions regarding the fact that the defendants knew that other civilians not associated with the Northstar program received equipment and the fact that numerous state officials not associated with counter-drug activities received equipment. Continuation of Investigation report signed by John Mannion dated 7/16/97, page 16, paragraph 3, plaintiff's exhibit 13 submitted to the court in the plaintiff's opposition to summary judgment states that on May 7, 1997, "Commissioner Kirschner then gave [Mannion] a copy of a letter he had received the previous day from Ms. Mary Ann Handley who is the Legal Counsel for Gov. Rowland. She had been asked by Gov. Rowland to conduct an in-house review 'to ascertain whether any members of his family or administration did in fact receive equipment obtained by Trooper D'Angelo through Project Northstar.' Her investigation and

9

subsequent report showed that two civilian members of the Governor's staff – Mr. Joseph Nesteriak and Mr. Michael Cicchetti- did receive Project Northstar equipment from Tpr. D'Angelo. This report also stated that the husband of the Lt. Governor, Mr. Louis Rell, obtained equipment from Tpr. D'Angelo as well." The record also shows that John Mannion and the entire Central District Major Crime unit received Northstar equipment. (See plaintiff's exhibit 14 pages 43-51.) The record further indicated that Mannion disclosed to McGuire and Kirschner that he had obtained Northstar equipment. (See Deposition of John Mannion dated 5/12/05, plaintiff's exhibit 14, page 47.) The record also shows that the defendants knew that Governor Rowland's children received military surplus equipment from Northstar. (See Deposition of John Mannion dated 6/14/05 plaintiff's exhibit 15, page 63). D'Angelo's affidavit, exhibit 1, paragraph 14 states that, "I had no knowledge of an did not sign the 'Agreement Between the State of Connecticut and Section 1208 Participants.'" These facts taken in the light most favorable to D'Angelo shows that he did not know the terms and conditions that the Northstar program was allegedly governed by. These facts show that D'Angelo did not have the requisite intent to deprive and defraud the public community and would have changed the probable cause calculus. These facts are extremely material to the probable cause calculus as Mannion and the other major crimes personal were allowed to receive Northstar equipment even though they were not involved with counter-drug activities. These facts show that D'Angelo had authority to give Northstar equipment to civilians

and state police personnel and that the CT State Police did not follow the 1208 Memorandum of understanding.  Mannion and the other defendants were receiving Northstar equipment and other civilians including Governor Rowland's children were receiving Northstar equipment and the defendants failed to put this information in the warrant.  These facts clearly show that D'Angelo had no criminal intent which is a essential element of larceny.   In fact the omission in the warrant that D'Angelo never saw or signed the 1208 memorandum of understanding would change the probable cause calculus because the omission of this information misleads a magistrate to believe that D'Angelo and the state police followed the terms and conditions of the 1208 memo when in practice they did not and the defendants knew this.

These omissions together vitiate probable cause in that they show D'Angelo did not have the intent to deprive or defraud the public community by giving the meat grinder to his neighbor.  A magistrate should have been informed of the above-mentioned facts.  The totality of these material omissions taken in the light most favorable to D'Angelo show that these omissions were intentional for the purpose to enhance the contents of the affidavit as support for a conclusion of probable cause.  These omissions also show that the administration ratified and condoned D'Angelo's activities and that he was given authority to give Northstar equipment to civilians including the Governor's children.  There exists a genuine dispute whether a magistrate would have issued the warrant on the

basis of the corrected affidavit, therefore this court should not have granted summary judgment.

5.   **The plaintiff requests this court to reconsider its ruling that since it found that probable cause existed to arrest D'Angelo for Larceny in the Second Degree in connection with the meat grinder that the court does not have to analyze further the three (3) other counts which D'Angelo was charged with to determine whether probable cause existed or not.**

Since the Court did not disclose the authority it was relying on at oral argument for this proposition, this counsel assumes that the court was relying on Jaegly v. Couch, 439 F. 3d 149 (2nd Cir. 2006). The plaintiff requests this court to reconsider its ruling as the precedent in Jaegly only applies to federal claims for false arrest. The holding in Jaegly does not apply to D'Angelo's federal or state claim for malicious prosecution. The plaintiff requests that this court reconsider its decision to only analyze one of the four state criminal counts. If this court is relying on Jaegly the plaintiff argues that on public policy grounds a court considering a claim for false arrest should be required to analyze all criminal charges and determine whether probable cause exist for each. If a court were only required to examine one charge in a criminal complaint, then police could potentially arrest a person for a minor charge, then add numerous other charges with no probable cause. The other charges could be completely baseless and frivolous and would cause a person to suffer humiliation and a person would not be able to seek a remedy in court. For example, the police could arrest a person for jaywalking and then add frivolous charges of rape, assault, and child pornography. The later charges would

12

destroy a person in the public eye and would cause severe mental suffering.  Under the courts reasoning as long as the police had probable cause to arrest the person for jaywalking then their claim for false arrest on the other frivolous charges would be dismissed.  This is not sound public policy.  In any event if this court is relying on <u>Jaegly v. Couch</u> for its ruling, Jaegly does not control the court's analysis of the plaintiff's state and federal claim for malicious prosecution.

    WHEREFORE, the Plaintiff, Eugene D'Angelo respectfully requests that his motion for reconsideration be granted

                                      THE PLAINTIFF,
                                      Eugene D'Angelo

By:  _____
     Jon D. Golas
     Federal Bar Number:  ct23324
     Golas, Golas & Golas, P.C.
     945 Main Street, Suite 306
     Manchester, CT 06040
     Tel.#(860) 646-4545
     Fax#(860) 646-8604
     His Attorney

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, postage prepaid, via

U.S. Mail to the following counsel of record this 21st day of July 2006.

Neil Parille
Lynn D. Wittenbrink
Assistant Attorney Generals
110 Sherman Street
Hartford, CT 06105

 

                                                 Jon D. Golas
                                                 Golas, Golas & Golas, P.C.
                                                 945 Main Street, Suite 306
                                                 Manchester, CT 06040